Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 24 August 1996.
3. On 24 August 1996 defendant was a duly qualified self-insured employer under the North Carolina Workers Compensation Act.
4. Plaintiffs average weekly wage is to be determined by the Industrial Commission Form 22, admitted into evidence as Stipulated Exhibit #2.
5. Plaintiffs medicals regarding this claim are admitted into evidence as Stipulated Exhibit #3.
6. Industrial Commission Forms 18 and 61 are admitted into evidence as Stipulated Exhibit #4.
7. Plaintiffs personnel records are admitted into evidence as Stipulated Exhibit #5.
8. A 14 May 1998 note from Mike Albright to Horace is admitted into evidence as Stipulated Exhibit #6.
9. A 14 March 1983 letter from Neil Koonce to Mr. Street is admitted into evidence as Stipulated Exhibit #7.
10. Plaintiff was out of work from 12 August 1998 through 4 November 1998. Plaintiff received $1,564.29 in disability benefits from 21 August 1998 through 1 November 1998 pursuant to an entirely defendant-funded plan.
11. The issues to be determined by the Commission are whether the plaintiff sustained a compensable injury on 24 August 1996, and, if so, to what, if any, benefits is she entitled.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On 24 August 1996 plaintiff was a 47-year old female employed by defendant as a spinner. Plaintiff has been employed by defendant in the textile industry for approximately 26 years. Plaintiff has been a spinner since 1984.
2. Plaintiffs duties as a spinner included monitoring seven open-end frames with one hundred and forty-four spindles on each frame. Plaintiff checked for empty cans of sliver (cotton), yarn breaks, or packages that were out of yarn. Plaintiff additionally made sure the machines were clean and informed the technicians if there was a problem. Once a package on the end of a frame was empty, plaintiff took a full or nearly full package of yarn and replaced it in order to make starter packages. A full package of thread weighs approximately nine and one-half pounds and is twelve inches in diameter.
3. Plaintiff is five feet, five inches tall. The spool, which contains the package on the end of the frame, is approximately six feet from the floor. The plaintiff used a two-step stool in order to reach the package.
4. At about 5:30 p.m. on 24 August 1996, plaintiff took a package approximately three-quarters full and weighing about six pounds to the spinning frame, stepped on the step stool and placed the package on the top of the frame. Plaintiff then noticed her shoe was untied and she sat down on the step stool to tie her shoe. While plaintiff was bent over, the package she had just placed on the top of the frame fell down two to two and one-half feet, striking plaintiff in the back of her head and the top portion of her neck. Plaintiffs head then went forward and the impact knocked her from the step stool.
5. A co-employee, Louis McNair, witnessed the package striking the plaintiff. Mr. McNair was able to catch plaintiff and prevent her from striking the floor. Two other employees, Rhoda Ingram and Terri Faust, observed the plaintiff in pain immediately following the work-related accident.
6. Plaintiff immediately reported the falling package incident to her supervisor, Carolyn Featherstone. Ms. Featherstone did not immediately complete an accident report but later did so at plaintiffs insistence.
7. Following the accident on 24 August 1996, plaintiff experienced headaches, neck and shoulder pain, and arm weakness. Plaintiff did not originally suspect the package accident as the cause of her symptoms due to plaintiffs family history of lung cancer. Plaintiff first thought she was suffering from either lung cancer or Lou Gehrigs disease.
8. On 6 November 1996, plaintiff sought treatment from Dr. David Keller, her family physician. Plaintiff related a six week history of pain in her shoulders, greater on the right side. Plaintiff also complained of right ring finger pain. At the time of this doctors visit, plaintiff did not remember the package falling on 24 August 1996.
9. In December 1996, plaintiff correlated the 24 August 1996 falling package incident with the pain and symptoms she was experiencing in her shoulders, neck and arms. Plaintiff went to defendant-employers medical department on 12 December 1996 and saw Guilda Ausborne, a nurse. Ms. Ausborne noted plaintiffs cervical pain, following a package hitting plaintiff in August 1996. Ms. Ausborne set up an appointment for plaintiff with Dr. St. Claire.
10. Plaintiff saw Dr. Steven St. Claire on 17 December 1996. Dr. St. Claire noted plaintiffs symptoms of headaches and neck pain as well as tightness and weakness in plaintiffs arms. Dr. St. Claire recommended X-rays, medication and physical therapy if defendant accepted the claim. However, defendant denied plaintiffs claim.
11. Plaintiff returned to her own physician, Dr. Keller, for treatment. Dr. Keller diagnosed chronic cervical and upper back strain. A cervical X-ray showed some degenerative changes at the C5-6 level. Dr. Keller prescribed physical therapy, which plaintiff underwent in early 1997. By mid-February 1997, plaintiffs headaches had improved, however, plaintiff continued to experience pain and weakness in her neck and upper extremities.
12. When plaintiffs pain did not resolve over the next year, Dr. Keller referred plaintiff to Dr. Anna Voytek, a neurologist. Plaintiff saw Dr. Voytek on 6 April 1998 for an evaluation of right arm pain. Dr. Voytek diagnosed plaintiff with a C6 radiculopathy and a secondary rotator cuff tendinitis. Dr. Voytek prescribed Prednisone, Relafen, and time out from work. Plaintiff did not work 16 April 1998 through 29 April 1998 as a result of her neck pain. By 27 April 1998, plaintiff had improved.
13. On 1 June 1998 plaintiff returned to Dr. Voytek. Upon examination plaintiff showed signs of impingement. Dr. Voytek sent plaintiff for an MRI. The MRI showed mild posterior spondylosis at C5-6 and a probable small right posterolateral C5-6 disc bulge or herniation causing right lateral recess stenosis and possible impingement of the right C6 nerve root. Dr. Voytek referred plaintiff to a neurosurgeon.
14. Plaintiff sought treatment from Dr. Henry Pool, a neurosurgeon, on 8 June 1998. Dr. Pool suspected a cervical disc herniation was causing plaintiffs pain and decreased sensation. Dr. Pool offered plaintiff a choice of continued conservative care or a cervical diskectomy and fusion.
15. On 14 August 1998, Dr. Pool performed a C5-6 diskectomy and fusion with allograft. The surgery revealed plaintiff suffered from a right C5-6 herniated nucleus pulpous with radiculopathy.
16. Plaintiff received post-surgery care from Dr. Pool on 24 August 1998 and 16 October 1998. By the October visit, plaintiff was not suffering from any neck or upper extremity pain.
17. The greater weight of the evidence is that plaintiff sustained an injury to her cervical spine arising out of and in the course of her employment with defendant on 24 August 1996. As a result of this injury, plaintiff sustained a C5-6 disc herniation resulting in surgery.
18. As a result of plaintiffs 24 August 1996 work-related injury, plaintiff was not able to work or earn wages from 12 August 1998 through 4 November 1998. After this, plaintiff returned to defendant earning the same or greater wages than she earned prior to 24 August 1996.
19. Plaintiff reached maximum medical improvement on 15 October 1998. Plaintiff retains a twelve percent permanent functional impairment to her back as a result of her work-related accident on 24 August 1996 and subsequent surgery.
20. Plaintiffs average weekly wage on 24 August 1996 pursuant to an Industrial Commission Form 22 was $515.97, resulting in a compensation rate of $344.00 per week.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 24 August 1996 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. 97-2(6).
2. As a result of plaintiffs compensable injury, plaintiff is entitled to temporary total disability from 16 April 1998 through 29 April 1998; and from 12 August 1998 through 4 November 1998, at her compensation rate of $344.00 per week. Defendants are entitled to a credit in the amount of $1,564.29 for disability paid pursuant to an employer-funded plan from 21 August 1998 through 1 November 1998. N.C. Gen. Stat. 97-29; 42.
3. As a result of plaintiffs compensable injury, plaintiff is entitled to thirty-six weeks of compensation at the rate of $344.00 per week for the twelve percent permanent partial disability to her back. N.C. Gen. Stat. 97-31(23).
4. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendant provide all medical treatment arising from plaintiffs compensable injuries to the extent it tends to effect a cure, give relief, or lessen plaintiffs disability. N.C. Gen. Stat. 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee approved herein, defendant shall pay plaintiff temporary total disability at her compensation rate of $344.00 from 16 April 1998 through 29 April 1998; and from 12 August 1998 through 4 November 1998. These amounts have accrued, and shall be payable in a lump sum, subject to a $1,564.29 credit for disability benefits paid through an employee-funded plan.
2. Subject to a reasonable attorney fee approved herein, defendant shall pay plaintiff $344.00 per week for thirty-six weeks for her twelve percent permanent partial disability.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 and 2 of this AWARD is approved for plaintiffs counsel and shall be deducted from those sums due plaintiff and payable directly to plaintiffs counsel.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiffs disability, subject to the time limitation of N.C. Gen. Stat.97-25.1.
5. Defendant shall pay all costs.
This the ___ day of August 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp